# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN ALAN OWEN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-18-373-G |
| ANDREW SAUL,<br>Commissioner of Social Security,[1] | ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

Plaintiff John Alan Owen brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Having reviewed the administrative record (Doc. No. 12, hereinafter "R. \_"),[2] and the arguments and authorities submitted by the parties, the Court reverses the Commissioner's decisions and remands the case for further proceedings.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed his DIB application on February 15, 2015, and ultimately alleged disability beginning January 6, 2015. R. 12, 28, 155-56. The SSA denied his

---

[1] The current Commissioner is hereby substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

application initially and on reconsideration. R. 64-91. At Plaintiff's request, an administrative law judge ("ALJ") held a hearing on December 13, 2016, after which the ALJ issued an unfavorable decision on April 4, 2017. R. 9-63.

The ALJ followed the five-step sequential evaluation process in determining Plaintiff was not entitled to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant time period. R. 14. At step two, the ALJ determined that Plaintiff has severe impairments of fibromyalgia and peripheral neuropathy. R. 14.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 14-15.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") during the relevant period, based on all of his medically determinable impairments, and found that Plaintiff had the ability to perform light work "except no climbing ladders, ropes or scaffolds." R. 15; *see* 20 C.F.R. § 404.1567(b).

Relying upon the hearing testimony of a vocational expert ("VE"), the ALJ found at step four that Plaintiff could perform his past relevant work as a chaplain. R. 19. Thus, the ALJ determined that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant period. R. 19-20. The SSA Appeals Council denied

review, R. 1-5, and the ALJ's unfavorable determination stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

## STANDARD OF REVIEW

This Court's judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," in determining whether the ALJ's decision is supported by substantial evidence. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). Though a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

In this action, Plaintiff alleges that the ALJ committed legal error by failing to properly evaluate the December 2016 Medical Assessment Form (the "2016 MAF") of Plaintiff's treating physician, R. Michael Eimen, DO. *See* Pl.'s Br. (Doc. No. 19) at 7-12.

A. *The Relevant Record*

The record contains evidence of Plaintiff's treatment by Dr. Eimen for various issues, but chiefly fibromyalgia and pain, from January 2015 through December 2016. In January 2015, Plaintiff was treated for fibromyalgia. R. 267-68. A few months later, Plaintiff returned with complaints including pain; Dr. Eimen ordered a brain MRI and adjusted the prescribed medications. R. 284-87. In May 2015, Dr. Eimen noted Plaintiff's complaints of dizziness, pain, and sleep apnea, as well as the fact that Plaintiff was undergoing laser treatment for fibromyalgia trigger points. R. 282-83. The next month, Plaintiff reported joint and muscle pain. The treatment record noted Plaintiff's fibromyalgia and his inability to lift over 10 pounds. R. 280-81.

In July 2015, Dr. Eimen completed a Medical Source Statement (the "2015 MSS"), in which he opined that Plaintiff could stand and/or walk or sit for two to four hours in an eight-hour workday and that Plaintiff would miss work about two times per month due to his pain and sleep difficulties. R. 290-92. A record from September 22, 2015, reflects that Plaintiff complained of losing his ability to grip with his right hand and of pain that was "almost overwhelming." R. 331. Dr. Eimen adjusted Plaintiff's medications and added a diagnosis of peripheral neuropathy to the recurring diagnosis of fibromyalgia. R. 332. The notes from January and May 2016 reflect continuing muscle pain, a refill of Plaintiff's

Norco, and a facial skin issue. R. 328-30, 333-35, 359. At an August 2016 visit, Dr. Eimen adjusted Plaintiff's medications. R. 355-56.

On December 5, 2016, Dr. Eimen noted, in addition to fibromyalgia, Plaintiff's gastroesophageal reflux and his bilateral joint pain in his hands. R. 353-54. Plaintiff was described as being very fatigued, with poor memory for daily events. R. 354. That same day, Dr. Eimen completed the 2016 MAF. On this form, he stated that he had seen Plaintiff at 90- to 120-day intervals since 2012 for both general medical care and "evaluation and t[reatment] for fibromyalgia." R. 362. Dr. Eimen noted Plaintiff's multiple other conditions and offered a "guarded" prognosis. R. 362. Dr. Eimen additionally stated that Plaintiff exhibited "multiple tender points," "muscle weakness," "chronic fatigue," "paresthesia" in his legs," "morning stiffness," and "joint tenderness," with "severe" chronic pain and fatigue that would interfere with the attention and concentration needed to perform even simple work tasks "more than 20%" of an eight-hour workday. R. 362.

Additionally, Dr. Eimen opined that Plaintiff's chronic pain, chronic fatigue, and muscle tenderness would require Plaintiff to take more than three unscheduled breaks of at least 15 minutes each. R. 363. Dr. Eimen found that Plaintiff would have "good days" and "bad days" and would be absent from work more than four days per month due to his impairments and treatment. R. 363. Dr. Eimen affirmatively agreed that his "knowledge of the nature and severity of [Plaintiff's] condition and limitations" was based upon his own "exams, [Plaintiff's] response to treatment, and the results of exams and testing." R. 363.

5

B. *The ALJ's Written Decision*

In her written decision, the ALJ mentioned several items from Dr. Eimen's treatment notes while discussing Plaintiff's medical history. R. 17. The ALJ gave the 2015 MSS "limited weight," finding that Dr. Eimen's notes of his examinations did not support the conclusions of the MSS and that Dr. Eimen did not evaluate certain physical and neurological factors. R. 18.

The ALJ summarized the findings of the 2016 MAF and stated the following:

> T[]he undersigned gives limited weight to [the 2016 MAF]. . . . . In sharp contrast [to the findings of the 2016 MAF], the contemporaneous office note of Dr. Eimen of the same date is silent concerning any such limitation or restriction. Instead, Dr. Eimen simply modified [Plaintiff's] medications without any mention of inability to perform simple work tasks or absenteeism. As such, the finding and assessment of Dr. Eimen can be given no more than some limited weight or consideration.

R. 18 (citation omitted).

C. *Requirements for Consideration of a Treating-Physician Opinion*

By regulation, a treating source's medical opinion generally is given "more weight" than that of a nontreating source. 20 C.F.R. § 404.1527(a)(2), (c)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). Under Tenth Circuit authority, the evaluation of a treating physician's opinion follows a two-step procedure. *Watkins*, 350 F.3d at 1300. First, the ALJ must determine whether the treating physician's opinion should be given "controlling weight" on the matter to which it relates. *See id.*; 20 C.F.R. § 404.1527(c)(2). The medical opinion of a treating physician must be given controlling weight if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques"

and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)).[3] Second, if the ALJ has determined that the medical opinion of a treating physician is not entitled to controlling weight, the ALJ must determine what lesser weight should be afforded the opinion. *See Watkins*, 350 F.3d at 1300-01; *Langley*, 373 F.3d at 1119. The determination of how much deference to afford a treating-physician opinion not entitled to controlling weight should be made in view of a prescribed set of regulatory factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (internal quotation marks omitted); 20 C.F.R. § 404.1527(c)(2)-(6).

The ALJ must both consider the factors and provide "good reasons" for the weight he or she ultimately affords the opinion. 20 C.F.R. § 404.1527(c)(2). The ALJ's decision "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Watkins*, 350 F.3d at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *5). If the ALJ

---

[3] Social Security Ruling 96-2p has been rescinded for claims filed on or after March 27, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01 (Mar. 27, 2017).

chooses to "reject[] the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.* at 1301 (internal quotation marks omitted).

D. Discussion

Plaintiff argues that the ALJ failed to properly apply the above requirements. Specifically, Plaintiff asserts that the ALJ erred in determining how much deference was due to Dr. Eimen's 2016 MAF and in granting that opinion limited weight.[4] The Court agrees.

First, although an ALJ need not explicitly discuss every regulatory factor when considering opinion evidence, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), the ALJ may not essentially ignore those factors and rely upon a single treatment note's failure to include functional limitations to reject a treating-physician opinion. Yet that is precisely what transpired here. *See* R. 18; *Watkins*, 350 F.3d at 1300-01; *Ford v. Apfel*, No. 99-5134, 2000 WL 702752, at *4 (10th Cir. May 26, 2000) (noting that the absence of records showing certain functional limitations "means nothing" when the claimant was not working when he saw his treating physicians and those physicians were not evaluating him for disability purposes). "The absence of evidence is not evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993) (reversing when ALJ's determination that plaintiff

---

[4] Despite Plaintiff's sole focus on the alleged legal errors committed by the ALJ, Defendant's response is framed as an argument that the ALJ's decision is supported by substantial evidence. *Compare* Pl.'s Br. at 6 ("The issues in this case present questions of law."), *and id.* at 12 (seeking reversal on the ground that the ALJ's decision "did not comport with relevant legal standards"), *with* Def.'s Br. (Doc. No. 19) at 8-15 (characterizing Plaintiff's points as a contention that the ALJ's findings lack substantial evidence).

8

could do sedentary work was not supported by substantial evidence and, instead, the ALJ relied upon "*the absence of contraindication* in the medical records"); *cf. Gourley v. Colvin*, No. CIV-15-880-HE, 2016 WL 3579048, at *3 (W.D. Okla. Apr. 15, 2016) (R. & R.) (finding no error when ALJ discussed medical records from treating physician but did not assign them any weight because the treatment notes were not "true medical opinions" (alteration omitted)), *adopted*, 2016 WL 3582158 (W.D. Okla. June 28, 2016).

Second, the Court is unable to find that the ALJ's error should be overlooked as harmless. As argued by Plaintiff, and not disputed by Defendant, the VE testified that if a person's "bad days" caused him or her to miss two days of work per month (as Dr. Eimen opined in the 2015 MSS, R. 292) or four days per month (as Dr. Eimen opined in the 2016 MAF, R. 363), then that person would not be able to maintain employment. R. 62. Given that testimony, and the fact that adoption of the 2016 MAF would result in limitations incompatible with the RFC determination, the Court cannot "confidently say that *no* reasonable administrative factfinder, *following the correct analysis*, could have resolved the factual matter in any other way." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (emphasis added) (internal quotation marks omitted).

Because the ALJ's discussion does not reflect that she properly considered the relevant factors in assessing Dr. Eimen's 2016 MAF, and the Court is unable to find that this error was harmless, reversal is required. *See Watkins*, 350 F.3d at 1299; *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994) (noting that failure to provide the court "with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal" (internal quotation marks omitted)).

9

CONCLUSION

Based on the foregoing analysis, the decision of the Commissioner is REVERSED and REMANDED in accordance with sentence four of 42 U.S.C. § 405(g). Judgment will issue accordingly.

IT IS SO ORDERED this 23rd day of September, 2019.

CHARLES B. GOODWIN
United States District Judge